**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. CCB-14-0121 |
| | : | |
| ARTHUR JETER | : | |
| | : | |

**MEMORANDUM**

The defendant Arthur Jeter seeks to suppress evidence, specifically a handgun, retrieved from the back seat floor of a car in which he was a front seat passenger on October 23, 2013. (Tr. 9/12/14, M–12.) Through counsel Mr. Jeter raises troubling issues concerning the handling of a confidential informant ("CI"), the apparent failure of the city police to disclose the existence of that CI to the city prosecutor, and the reliability of the lead detective's recollection. Ultimately, however, these issues do not dispel the existence of reasonable suspicion at the time the officers approached the car with a display of force that amounted to a seizure. From that initial investigative detention a rapid evolution of events led to probable cause to arrest when Sgt. Edward Davis saw Mr. Jeter toss into the back of the car a black sweatshirt from which a gun fell onto the floor, where, now in plain view, it was seen and retrieved by Det. David Kincaid. (M–21-25, 170-73.) Accordingly, Mr. Jeter's motion to suppress the gun will be denied.

The CI in this case was not anonymous but rather agreed to become a CI to avoid a drug charge (and backup time on an armed robbery). (M–37, 112, 124.) On October 22, 2013, the CI told Det. Robert Clark "he would be able to have a friend bring him a gun," (M–6), and Det.

Clark told him that if he did so, he would not be charged with the drug offense, (M–124). Outside the Baltimore City Police Department's Southeast District, the CI spoke with Mr. Jeter on a cell phone placed on speakerphone so Det. Clark could hear the conversation. (M–5-10, 114-15.) The CI told Mr. Jeter he needed a gun, and Mr. Jeter agreed to give him one the following day. (M–9-11, 114-15.)

On October 23, 2013, Det. Sabrina Hill stationed a covert vehicle about a block away from Mr. Jeter's mother's house on North Kenwood Avenue, where the CI told officers the transaction would occur. (M–14, 88.) The CI told officers that Mr. Jeter would be wearing a black hoodie and blue jeans, and Det. Hill observed through binoculars an individual matching Mr. Jeter's description sitting on the front steps of his mother's house, corroborating the CI's description. (M–13-14, 89-90.) Det. Hill observed that Mr. Jeter appeared to be smoking a hand-rolled cigar that, based on her training and experience, she believed to contain marijuana. (M–90.) She notified other officers stationed around the block, who approached Mr. Jeter. (M–54, 90.) Though the officers smelled marijuana, a frisk of Mr. Jeter revealed neither drugs nor a gun, and the officers left. (M–17-18, 55-56, 91.)

About thirty minutes later, Det. Hill observed Mr. Jeter walking to the end of the block and cautiously looking around. (M–59-60.) The CI arrived soon afterward, and parked his car near the North Kenwood house. (M–120.) The CI left the car and spoke with Mr. Jeter, who told him to wait in the car while he got the gun. (M–120-21.) The CI then called Det. Clark and in a "frantic" manner told him Mr. Jeter was "coming out of the house right now with the gun." (M–19, 121.) Mr. Jeter walked out of the house holding what Det. Hill believed to be a black

bag, and began running to the CI's car. (M–96.)[1] Mr. Jeter entered the car and sat in the front passenger seat. (M–122.) He then "pulled the gun out," and showed it to the CI. (M–122.) At that moment, officers approached and surrounded the car, and the CI saw Mr. Jeter toss the gun into the back. (M–122.) Sgt. Davis and Det. Clark saw Mr. Jeter toss what appeared to be a black sweatshirt into the back seat. (M–22, 172-73.) Sgt. Davis saw a gun fall out of the sweatshirt and onto the floor behind the driver's seat, and said, "Gun." (M–22, 172-73.) Det. Clark then "removed Mr. Jeter from the car and restrained him," (M–22), and Det. Kincaid retrieved the gun, (M–173).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. An officer may, however, "consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). This standard is less demanding than probable cause but "requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123. A seizure of a vehicle passenger occurs when police "exercise[e] control to the point that no one in the car was free to depart without police permission." *Brendlin v. California*, 551 U.S. 249, 257 (2007). Thus, "a passenger may bring a Fourth Amendment challenge to the legality" of the seizure. *Id.* at 259. But "items in a car that are in plain view to an officer located outside the car are not 'subject to a reasonable expectation of privacy,' and thus an officer's discovery of them entails no search or seizure . . . ." *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 837 (D. Md. 2012) (quoting *New York v. Class,* 475 U.S. 106, 118-19 (1986)).

---

[1] The CI recalled that Mr. Jeter had his hands in his pockets when he approached the car, but also said the gun was hidden and he could not see exactly from where Mr. Jeter pulled the gun. (M–122, 157-58.)

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "'Probable cause' sufficient to justify an arrest requires 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004) (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37, (1979)). "Determining whether [an] officer has probable cause involves an inquiry into the totality of the circumstances." *Humphries*, 372 F.3d at 657.

The officers here had reasonable, articulable suspicion that Mr. Jeter possessed a gun when they seized him by approaching and surrounding the car: the conversations between Det. Clark and the CI, the phone call between the CI and Mr. Jeter that Det. Clark heard, Det. Hill's observations, and in particular the CI's last "frantic" call to Det. Clark indicating Mr. Jeter was leaving his mother's house with a gun, provided reasonable suspicion to support the *Terry* stop of the car's occupants. *See United States v. Singh*, 363 F.3d 347, 355 (4th Cir. 2004) (where a tip "was substantially corroborated by the developing circumstances," it supported reasonable suspicion). In the midst of that stop, Sgt. Davis saw a gun fall out of a sweatshirt Mr. Jeter had just thrown into the back of the car, providing probable cause to arrest Mr. Jeter. *See United States v. Wells*, 98 F.3d 808, 810 (4th Cir. 1996) (where officers saw a gun in plain view while executing a search warrant, and officers knew the defendant had a previous felony conviction, there was "probable cause to believe that the firearm constituted evidence" of a violation of the federal felon-in-possession statute). That Mr. Jeter, who was known to have a prior conviction

for armed robbery, (M–42), did not have the gun on his person when frisked earlier that day is not inconsistent with the gun remaining inside his mother's house until his encounter with the CI.

Defense counsel's supplemental evidence by way of a reenactment suggesting that it would have taken just less than ten seconds longer for Sgt. Davis to reach the CI's car than was consistent with the officer's testimony is an insufficient basis to conclude that Sgt. Davis did not in fact see Mr. Jeter toss the black sweatshirt to the back seat and the gun fall out of it onto the floor. Recollections of time, distance, and specific location are never precise. Further, the CI's car did not have tinted windows, (M–81), and the supplemental photography evidence of a similar car showed that indeed it would have been possible to see through the windows to the floor.

Mr. Jeter, of course, denied that the gun or the car were his. Thus the standing he has to bring this motion depends on the illegality of the seizure of the car and its occupants, which allowed the officers to observe the gun. Because that brief investigative detention did not violate the Fourth Amendment, Mr. Jeter's motion to suppress the gun will be denied.[2]

## CONCLUSION

For the reasons stated above, Mr. Jeter's motion to suppress the gun will be denied. A separate order follows.

December 30, 2014   /S/
Date                Catherine C. Blake
                    United States District Judge

---

[2] I recognize that the defense identified numerous inconsistencies in the testimony concerning the events leading up to the seizure of the gun, and omissions from the statement of probable cause to support the initial charges against Mr. Jeter. These omissions appear intended to protect the identity of the CI. While the jury may reach a different opinion on credibility, I do not find the inconsistencies and omissions sufficient to conclude there was no reasonable suspicion of criminal activity when the officers seized the individuals in the car.