**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. CCB-14-0121 |
| | : | |
| ARTHUR JETER | : | |

## **MEMORANDUM**

The defendant Arthur Jeter seeks to suppress evidence recovered from a cell phone seized when he was arrested. Det. Michael Glenn obtained the phone from the Baltimore City Detention Center ("BCDC"), where it was being stored, though the use of a grand jury subpoena after the grand jury had already indicted Mr. Jeter; though the grand jury lawfully issued a subpoena to BCDC for "any and all property belonging to inmate Arthur Jeter . . . during his period of incarceration," BCDC failed to comply with it before an indictment was returned. Det. Glenn obtained a federal search and seizure warrant after he recovered the phone but before accessing the phone's content. A motions hearing was held on September 19, 2014. For reasons set forth below, the post-indictment use of the pre-indictment grand jury subpoena was improper but not motivated by bad faith, and a suppression remedy is not appropriate. Accordingly, the court will deny Mr. Jeter's motion to suppress the cell phone evidence.

Mr. Jeter was arrested for unlawfully possessing a gun on October 23, 2013. On February 20, 2014, Det. Glenn, a member of the Baltimore City Police Department ("BCPD") assigned to a task force with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since 2003, checked with the BCPD evidence control section to see if Mr. Jeter's cell

phone had been submitted by the detectives working on the case. (Affidavit in Support of Search and Seizure Warrant, Resp. Mot. Suppress Cell Phone Evidence Ex. 2 at 6, ECF No. 41-2; Tr. 9/19/2014 at 3.) Finding no cell phone, Det. Glenn went to BCDC to see if it was in the property control area there. (Tr. 3.) In the past, Det. Glenn had been able to obtain "at least a listing" of a detainee's property simply by calling BCDC. (Tr. 4.) This time, however, a lieutenant there told him BCDC would not provide information concerning the content of Mr. Jeter's property without "a court document or a subpoena." (*Id.*)

Det. Glenn then contacted Matthew Hoff, the Special Assistant United States Attorney ("SAUSA") assigned to Mr. Jeter's case, and that same day, February 20, 2014, a grand jury subpoena directed to BCDC "c/o Kelvin Harris, DPSCS," was issued for "any and all property belonging to inmate Arthur Jeter . . . during his current period of incarceration." (Resp. Mot. Suppress Cell Phone Evidence Ex. 1, ECF No. 41-1; Tr. 4.) Though the subpoena was served on BCDC via facsimile and email later that day, (Proffer of SAUSA Hoff, ECF No. 94), and the subpoena's compliance date was March 6, 2014, (Resp. Mot. Suppress Cell Phone Evidence Ex. 1), BCDC did not comply with the subpoena until after the grand jury returned an indictment against Mr. Jeter on March 13, 2014, (ECF No. 1). Specifically, on May 22, 2014, Det. Glenn "received information" that BCDC would make Mr. Jeter's property "available" to him on May 28, 2014. (Tr. 5, 10.) Det. Glenn returned to BCDC on that date,[1] but was unable to obtain the property because the BCDC official responsible for releasing property was not present. (*Id.*) The following morning Det. Glenn again went to BCDC and received the bag containing Mr. Jeter's property. (Tr. 5-6.) He then returned to his office with the property bag, opened it, and

---

[1] Though Det. Glenn responded in the affirmative when SAUSA Hoff asked if he went "back to BCDC on February the 28th of 2014," (Tr. 5), the context makes clear that SAUSA Hoff misspoke, and both he and Det. Glenn intended to refer to May 28.

photographed its contents. (Tr. 6.) Det. Glenn saw that Mr. Jeter's cell phone was among the items in the bag, though he did not turn on or use the phone. (*Id.*) He then placed the items in ATF's evidence control area. (*Id.*)

On June 18, 2014, Det. Glenn retrieved Mr. Jeter's property to note the cell phone's color, brand, serial number, and other identifying information for a search and seizure warrant. (Tr. 7.) He did not turn on or use the phone, though he did remove the battery to obtain some of the phone's identifying information. (Tr. 7, 12.) Det. Glenn signed an affidavit in support of an application for a warrant to search and seize the phone, and the warrant was issued on June 23, 2014. (Resp. Mot. Suppress Cell Phone Evidence Ex. 2, ECF No. 41-2.) An ATF agent executed the warrant and retrieved the information on the phone. (Tr. 8.)

Mr. Jeter challenges BCDC's post-indictment compliance with the grand jury's pre-indictment subpoena for the property taken from his person when he was arrested, which included the cell phone. He argues that the government would not have been able to obtain a search and seizure warrant to access the information inside the phone had it not unlawfully used the grand jury subpoena to acquire the phone following his indictment. He therefore asks the court to suppress the evidence gathered from the phone. Because this case does not involve the sort of bad faith manipulation of grand jury power that would support the suppression of evidence obtained through improper use of a grand jury subpoena, Mr. Jeter's motion to suppress the cell phone evidence will be denied.

The responsibilities of a grand jury include "the determination whether there is probable cause to believe a crime has been committed" sufficient to support an indictment. *United States v. Calandra*, 414 U.S. 338, 343 (1974). Though grand juries are afforded broad investigative

power to fulfill this responsibility, *id.* at 343-44, they "serve[ ] an independent investigatory function and [are]'not meant to be the private tool of the prosecutor,'" *United States v. (Under Seal)*, 714 F.2d 347, 349 (4th Cir. 1983) (citation omitted).  Prosecutors violate this fundamental concept when they "'utilize the grand jury solely or even primarily for the purpose of gathering evidence in pending litigation.'" *United States v. Bros. Const. Co. of Ohio*, 219 F.3d 300, 314 (4th Cir. 2000) (quoting *United States v. Moss,* 756 F.2d 329, 332 (4th Cir. 1985)).  Accordingly, "[o]nce a defendant has been indicted, the government is precluded from using the grand jury for the 'sole or dominant purpose' of obtaining additional evidence against him." *Moss*, 756 F.2d at 332 (quoting *(Under Seal)*, 714 F.2d at 350).  Despite the apparent force of this prohibition, "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority," *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300 (1991), and the defendant "bear[s] the burden of rebutting [this] presumption," *Bros. Const. Co*, 219 F.3d at 314.

     Here, the grand jury lawfully issued a subpoena to BCDC for the property taken from Mr. Jeter when he was arrested, and that subpoena was served on BCDC while the grand jury was still impaneled.[2]  The peculiar issue in this case arises from the fact that BCDC did not release the property to Det. Glenn until after the grand jury had already returned its indictment.  The government's post-indictment acceptance of property targeted by the pre-indictment subpoena qualifies as a "use" of the grand jury, and the sole or dominant purpose of that use was obtaining

---

[2] Mr. Jeter also argues that service of the subpoena on BCDC did not satisfy Federal Rule of Criminal Procedure 17(d).  Specifically, he argues that use of a facsimile to serve the subpoena on BCDC was improper, and that the BCDC official named in the subpoena was not personally served.  While BCDC may have had the right to refuse service of a subpoena by facsimile, it is not clear how the method of service adversely affected Mr. Jeter's rights in any way.  In any event, this challenge fails because Mr. Jeter has cited no authority requiring the exclusion of evidence subpoenaed by the prosecution from a third party (and already produced by that party) because the subpoena was improperly served.

evidence against Mr. Jeter for use in the criminal proceeding against him.

A suppression remedy, however, is not appropriate. To begin, none of the cases Mr. Jeter cites resulted in suppression of evidence or quashing of a subpoena because of an improper government purpose.[3] And the rare cases where courts have quashed a grand jury subpoena involved bad-faith manipulation of the power of the grand jury. *See, e.g.*, *In re Grand Jury Subpoena*, 175 F.3d 332, 337 (4th Cir. 1999) (upholding the district court's decision to quash a grand jury subpoena that the district court found was a "thinly-veiled effort to circumvent" a stay of a parallel civil *qui tam* proceeding). No such evidence of bad faith exists in this case. *Cf. Herring v. United States*, 555 U.S. 135, 144 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.").

Mr. Jeter argues that "[t]o condone the government's untimely enforcement of an apparently timely-issued subpoena sanctions the rampant misuse of the grand jury power through

---

[3] *See Moss*, 756 F.2d at 332 (upholding the district court's determination that the government's sole or dominant purpose in questioning two individuals before the grand jury following the defendant's indictment was not to discover additional evidence against the defendant, but to obtain evidence to prosecute a co-conspirator); *(Under Seal)*, 714 F.2d at 349-51 (reversing the district court's decision to quash a grand jury subpoena where the subpoena had both a proper and potentially improper purpose); *United States v. Woods*, 544 F.2d 242, 250 (6th Cir. 1976) (where claimed improper use of grand jury testimony was not argued to the district court, holding that the defendants failed to show that grand jury witnesses were not called "to determine whether other persons not yet indicted were also involved in the conspiracy under investigation"); *In re Grand Jury Proceedings*, 632 F.2d 1033, 1042 (3d Cir. 1980) (upholding the district court's decision not to quash a grand jury subpoena seeking documents partly concerning an investigation of others); *United States v. Crosland*, 821 F. Supp. 1123, 1127-28 (E.D. Va. 1993) (accepting the government's argument that its sole or dominant purpose in pursuing post-indictment enforcement of a pre-indictment subpoena was not to gather evidence on pending criminal charges because the information could have pointed to unrelated criminal activity, but granting the motion to quash for improper service of the subpoena); *United States v. Green*, 2007 WL 773735 at *3 (W.D. Ky. Mar. 9, 2007) (rejecting the defendant's argument that the government "abused the power of the grand jury in seeking compliance with subpoenas for recorded telephone calls after return of the indictment," where an FBI agent asked jail officials if the defendant could use more than one phone to make calls, but did not specifically "seek[ ] compliance with the subpoenas"); *Robert Hawthorne, Inc. v. Dir. of Internal Revenue*, 406 F. Supp. 1098, 1116-33 (E.D. Pa. 1975) (rejecting on various grounds the defendant corporation's allegations of governmental misuse of a grand jury); *United States v. Gross*, 165 F. Supp. 2d 372, 377-85 (E.D.N.Y. 2001) (dismissing an indictment on due process grounds because of the government's ten-year pre-indictment delay); *United States v. Kleen Laundry & Cleaners, Inc.*, 381 F. Supp. 519, 522-24 (E.D.N.Y. 1974) (denying the defendants' motion to dismiss the indictment against them where prosecutors obtained evidence through a subpoena issued in the name of a grand jury not in session).

the last-minute issuance of subpoenas prior to indictment with little regard to when compliance may occur." (Def.'s Reply 3, ECF No. 48.) Last-minute issuance of a grand jury subpoena could suggest a bad faith attempt to improperly use the power of the grand jury such that the exclusionary rule would be appropriate. But the subpoena at issue in this case was not issued "last-minute"; it was issued on February 20, several weeks before the March 13 indictment. Though the government's handling of the grand jury subpoena that led to Mr. Jeter's cell phone was improper, it does not require application of the exclusionary rule.[4]

## CONCLUSION

For the reasons stated above, Mr. Jeter's motion to suppress the cell phone evidence will be denied. A separate order follows.

January 7, 2015                                          /S/
Date                                                     Catherine C. Blake
                                                         United States District Judge

---

[4] The court need not address the government's argument that the cell phone evidence is admissible under the doctrine of inevitable discovery.